Steinhardt vs. Leman.

No. 248.

HENRIETTA STEINHARDT VS. E. J. LEMAN.

The voluntary abandonment of an attachment renders the attaching creditor and surety responsible for damages for the wrongful suing out ot the suit. But only such damages can be recovered as have been actually sustained when the attaching creditor acted without malice and upon proabable cause based upon reasonable grounds.

The intent to defraud can only be shown by the acts of the debtor upon which the creditor must base his belief. The creditor may be mistaken in his belief, but if the acts of the debtor are such as to justify that belief, the debtor, and not the creditor, is in default.

Any other construction of the law would open the door for the writ of attachment to be used as a means of profitable speculation and the extinguishment of a debt in damages.

A PPEAL from the First District Court, Parish of Caddo.
Hicks, J.

_Land & Land_ and _Wise & Herndon_ for Plaintiff and Appellant:

1. If a plaintiff in attachment voluntarily abandons it, he renders himself and his surety responsible in damages; and if it be set aside by order of court, it is _prima facie_ evidence that it was wrongfully issued, and that damage to some extent has been sustained. The probability and justice of the demand may be pleaded and given in evidence in mitigation or justification of a claim for vindictive damages. 3 L. 103, 291; 2 R. 313; 11 Ann. 302.

2. It is the disposal of his property by the debtor with the intent to defraud, that gives a right to the writ of attachment, and that intent must be clearly proved. 24 Ann. 69; 35 Ann. 339, 624.

3. Where an attachment is dissolved by judgment, in a suit for damages for the illegal suing out of the same, the fact of the dissolution of the attachment is a finality. 34 Ann. 341. The same rule governs where the plaintiff voluntarily abandons his attachment, which is a voluntary dissolution of the same.

4. On the dissolution of an attachment issued on the ground that the debtor was about to dispose of his property with intent to defraud his creditors, when the attaching creditor acted without malice and solely under the advice of an experienced attorney, the defendant shall recover the damages actually sustained, and no more. Damages actually sustained comprise not only pecuniary loss and actual expense incurred, such as costs and counsel fees, but also the mortification, annoyance and vexation caused to defendant by attachment. 33 Ann. 6; 34 Ann. 341; 38 Ann. 351.

5. Plaintiff's purpose and motives in selling her property were thoroughly honest; her action was open and above board; communicated to all interested and to the defendant himself. The attachment was sued out on the ground of fraud and voluntarily abandoned. Afterwards, plaintiff sold out her property, paid nearly all her debts, including that of defendant. Plaintiff is thoroughly solvent. Under these circumstances the action of defendant in suing out the attachment was insulting and aggravating in the extreme, and well calculated to wound and incense her, and to cast imputations upon her character as an honest woman. 38 Ann. 351.

6. Street rumors of the bad character and financial reputation of the agent, are inadmissible in a suit by his principal for damages for an illegal attachment. Besides it is hearsay. 6 N. S. 591.

7. Where the Supreme Court entertains no doubt upon the evidence, which is sufficient to do justice between the parties, the case will not be remanded, but be decided in direct opposi-

tion to the verdict of the jury. 1 H. D., p. 92, No. 3; otherwise the case will be remanded. Ib. No. 4.

*Alexander & Blanchard* and *Bell & Randolph* for Defendant and Appellee :

1. In the assessment of damages for a wrongful attachment, the rule is that the plaintiff is entitled to recover only the actual damages sustained and no more, unless in a case where the attachment was utterly unfounded and malicious. 13 Ann. 22; 15 Ann. 16; 33 Ann. 6; 34 Ann. 341; 35 Ann. 348, 518; 39 Ann. 132; 17 Ann. 182, 479.

2. The question of probable cause depends upon the party's honest belief. based upon reasonable grounds.

In this case the plaintiff was without credit; owed large debts; was losing money in the hotel business; had been sued in the justice court upon small bills, including a gas bill; was confessedly unable to pay indebtedness without selling furniture, the only property owned by her; was negotiating the sale of it and did sell it and leave the State immediately thereafter. The attaching creditor had repeatedly demanded payment of a small bill of $59, and had been put off from time to time by promises which were never fulfilled. Finally the debtor agreed to return some wine in payment of the bill and refused to deliver when called on for it, telling the creditor's clerk that she was about to sell out and that it was none of his business how he could get his money. The creditor then attached two barrels of wine, but within a few minutes thereafter voluntarily released it and dismissed the attachment at his costs.

No malice is shown, and the evidence establishes abundant probable cause and reasonable grounds for suing out the attachment.

3. Even if the lower judge charged improperly, yet if the evidence would not have authorized a different verdict, it will be upheld and the case will not be remanded. 5 Ann. 43; 7 Ann. 678; 10 Ann. 150; 21 Ann. 330.

The opinion of the court was delivered by

McENERY, J. The plaintiff, by her agent, S. Cohn, leased the Phœnix Hotel in the City of Shreveport. The power of attorney from Mrs. Steinhardt to Cohn is a general mandate to do and perform all things of a business nature in her name and behalf and for her benefit. The acts of Cohn in almost every conceivable business relation were her acts under the mandate. He managed the Phœnix Hotel.

The defendant, a creditor of the plaintiff for the sum of $59 92, sued out a writ of attachment against plaintiff's property, alleging as the reason therefor that she "has disposed of or is about to dispose of her property rights and credits, or some part thereof, with intent to defraud her creditors or give an unfair preference to some of them."

Under the writ the constable seized at the Phœnix Hotel two casks of wine. When the property seized was taken to the magistrate's office he was informed that the attachment had been dismissed. The attaching creditor thus voluntarily abandoned the attachment.

Steinhardt vs. Leman.

The plaintiff in this suit brought this action against the defendant, Leman, for the wrongful suing out of the writ of attachment; claims damages in the amount of $5000 for the illegal, malicious and wrongful attachment of her property; $1000 damages to her business reputation; $1000 damages for the mortification, annoyance and vexation the attach ment of her property caused her, and $3000 as punitive damages.

Defendant, in his answer, admits the suing out of the writ of attach ment and its voluntary abandonment. He also avers that plaintiff was indebted to him in the amount sued for in the attachment suit; that repeated demands had been made for its payment; that plaintiff had promised to deliver some wine to pay said amount, and afterwards refused to do so, and that she was about to sell her lease of the Phœnix Hotel and the property contained therein, which constituted all the property she possessed or owned in Caddo parish.

The case was tried before a jury and there was a verdict in favor of the defendant and a judgment rendered thereon, from which the plaintiff has appealed.

Two of the witnesses stated that they had heard reports about the time of the attachment, that there was a cloud upon the character and reputation of plaintiff's agent before he came to Shreveport.

Ojection was made, and overruled, to the introduction of this evidence on the ground that it was hearsay and inadmissible. The objection should have been sustained and the evidence rejected. But as the record contains sufficient evidence of the facts upon which the attach ment issued, it will be unnecessary to remand the case.

Plaintiff's counsel also excepted to the following charge of the court

1. "And if you find from the evidence that the plaintiff in attachment voluntarily dismissed it without any explanation, that is sufficient evi dence that it was wrongfully sued out, but if the act of dismissal has been explained, or reasons given for its dismissal, you will deter mine from all the facts whether it was dismissed because wrongfully ob tained or for reasons consistent with the legality of its issue."

2. "Mere belief of the fact without inquiry and grounds of belief do not amount to probable cause, but belief grounded on investigation and fact do amount to provable cause, whatever may be the truth."

3. "Now if you find that the attachment was sued out maliciously and without probable cause, you will give compensation to the plaintiff for her wounded feelings, vexation and harassment and injuries to her reputation."

We do not think there is any legal objection to the charge. Taken in its entirety it is impartial. There was nothing in it to influence the jury

in favor of the defendant.   The evidence would not have authorized a different verdict.

The attaching creditor, Leman, voluntarily abandoned the attachment, and thus rendered himself and surety responsible for damages for the wrongful suing out of the writ.   3 L. 103; 2 R. 318.

The defendant in the attachment suit, however, can only recover such damages as have been actually sustained, when the attaching creditor acted without malice and upon probable cause based upon reasonable grounds.   13 Ann. 22; 33 Ann. 6; 15 Ann. 16.

The record establishes the following facts :    The Phœnix Hotel, as managed by the plaintiff, sustained losses.   Plaintiff, or, which is the same thing, S. Cohn, her manager and agent, had no financial standing or credit in the City of Shreveport.   It was difficult for the plaintiff to procure the necessary supplies for the hotel.   The hotel owed some $3000, without means to pay this amount.   It is evident that his financial standing and credit were not affected by the attachment. Creditors who had trusted him before still continued to do so.   The witnesses, with practical unanimity, state that his credit was not affected by the attachment.   It was not good before the attachment, and it remained in the same condition thereafter.   She is, therefore, not entitled to damages for injury to her business reputation and credit.

The attached property was only in the custody of the office for a short time.   No furniture was removed from the house, and there does seem to have been any harshness in the service of the writ.   The two casks of wine were quietly seized, and quietly, as requested by Cohn, the agent, taken out the back way purposely to prevent notice and to avoid vexation.

It is difficult to estimate damage for the wounding of one's feelings, and there is not sufficient evidence in the record upon which to make an estimate of the mortification caused by the attachment to the plaintiff, and, therefore, the claim of $1000 for this is rejected.

The plaintiff is entitled to relief if the writ was sued out maliciously and without probable cause.

The lease of the Phœnix Hotel was offered for sale with the furniture contained therein.

There is no doubt but some of the creditors of the hotel had been told by Cohn that he intended to sell for the purpose of paying debts contracted in Shreveport.   The hotel lease was sold, and these debts, with the exception of a small amount, paid.   Leman, the attaching creditor, was paid.   At the time of the attachment, negotiations were in progress for the sale of the lease and furniture.   It does not appear

Cole, Executor et al. vs. City.

that Leman had been informed of the intended sale for the purpose of paying plaintiff's debts in the City of Shreveport. On the contrary, plaintiff's conduct, by her agent and manager, towards Leman, the attaching creditor, was such as to lead him to believe that his debt would not be paid.

Leman's bill had repeatedly been presented for payment, and as often postponed. On the 18th of May, 1889, when last presented, Cohn, the agent, promised he would give him some wine in payment of the bill. It was agreed to take the claret, but when called for on the same day its delivery was refused; and the clerk of Leman, who presented the bill, was told by Cohn that he was about to sell out, and that Leman could not get the wine. He was then asked, "What about the money?" and answered, "It is none of your business."

The intent to defraud can only be shown by the acts of the debtor, upon which the creditor must base his belief. The intent is secret, and it is only to be ascertained by the outward acts of the debtor.

The creditor may be mistaken in his belief, but if the acts of the debtor are such as to justify that belief, the debtor, and not the creditor, is at fault.

Any other construction of the law would open the door for the writ of attachment to be used as a means of profitable speculation and the extinguishment of a debt in damages.

Leman had not been informed that the property of plaintiff was to be sold to pay his debts. His debt had been refused, and the party whom he had sent to collect it rudely repulsed, the agreement to settle it by giving property for it ignored, and the clerk of Leman, when he asked for the money, told it was none of his business.

What other remedy had the creditor but to resort to a compulsory writ?

The attachment not having been sued out maliciously, and the defendant having good grounds upon which to base his belief for the reasons alleged in the suit, the plaintiff is not entitled to punitive damages.

Judgment affirmed.