(92 South. 720)

No. 23418.

## ALLIES OIL CO. v. AYERS.

(June 27, 1922.)

*(Syllabus by the Court.)*

1. **Tenancy in common ⟨⟩22—Colessee with one developing land entitled to share of oil less expenses.**

Colessees of oil-bearing lands, occupy towards each other the same relation as co-owners of such lands; if one explore for and develop the oil, without the concurrence and assistance of the other, who refuses to join him, he must nevertheless account to the other for his proportionate share of the oil, less expenses.

2. **Partition ⟨⟩10——Proper remedy when parties cannot agree.**

When parties own lands, or leases, or other property in common, and cannot agree between themselves, the obvious course for them to follow is to demand a partition thereof between them.

*(Additional Syllabus by Editorial Staff.)*

3. **Mines and minerals ⟨⟩55(1)—Owner of soil has sole right to take oil and gas, and he may transfer right.**

While oil and gas in place are not subject to absolute ownership as specific things apart from the soil of which they form part, the owner of the soil alone has the right to sever and appropriate them, and this right he may cede to another.

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Action by the Allies Oil Company against John H. Ayers. Judgment for plaintiff, and defendant appeals. Affirmed.

Dale, Young & Dale, of St. Joseph, for appellant.

Burke & Smith, of New Iberia, for appellee.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

ST. PAUL, J. [1] The original issues herein involved have now all passed out except one, to wit, whether a cotenant of oil-bearing lands, who fails, neglects, or refuses to contribute towards the exploration and development of the field, may yet claim of his cotenant a proportionate share of the oil produced (less expenses), when the latter has explored and developed the field at his own sole risk and expense.

### I.

In the case before us defendant owned an oil lease, and sold half of it to plaintiff. A well was sunk at their joint expense, which, however, turned out dry and was abandoned. As there was danger of losing the lease by

inaction, defendant was insistent on proceeding with the exploration and development. Defendant wished to go deeper with the abandoned well, but plaintiff refused; and the parties then selected another location, to which the drilling machinery was taken.

Thereafter it is shown (in an agreed statement of facts):

" * * * That plaintiff and defendant being unable to agree in the management of the well they had undertaken to drill, * * * nothing more was done concerning this said well. That * * * defendant at his own expense [then] commenced operations on the abandoned well, and expended all the funds used in bringing it in as a producing well; that plaintiff did not know * * * that defendant was working on same until the well was brought in as a producing well. That plaintiff contributed no portion of the funds expended in developing said abandoned well; that defendant never excluded or denied to plaintiff the right to operate for its own account on the leased premises."

The sole matter involved is one-half the produce of the aforesaid "abandoned" well (less expenses).

There was judgment below for plaintiff, and defendant appeals.

## II.

The question is not free of difficulty, and no precedent directly in point seems available. At first blush it might seem equitable that he who has assumed all the risk and borne all the expense of a hazardous undertaking should alone be entitled to the profits resulting from a successful outcome thereof. Still by having recourse to fundamental principles we find that this cannot apply here.

[3] Whilst it is true that "oil and gas, in place, are not subject to absolute ownership as specific things *apart from the soil of which they form part,*" nevertheless it is equally well settled that the owner of the soil has alone the right to sever and appropriate them, which right, of course, he may cede to another.

In this case the owner had ceded to defendant the exclusive right to sever the oil from the realty and make it his own, and defendant had in turn ceded a half interest to plaintiff. So that as soon as any oil was severed from the soil it became lawfully the joint property of plaintiff and defendant.

Nor does it signify that plaintiff contributed nothing towards the labor and expense of severing such oil from the land. For to the extent that they were invested by the owner with the right to sever the oil from the land plaintiff and defendant occupied towards each other exactly the same relations as if they owned the land in common. And it was held in Martel v. Jennings-Heywood Oil Syndicate, 114 La. 359, 38 South. 253, that where one co-owner had explored and developed an oil field without the concurrence or assistance of the other, he was nevertheless bound to account to that other for a proportionate share of the oil.

Another consideration might also be mentioned, which appealed to the district judge, and it is this: That if one co-owner, or colessee, merely because the other could not, or would not, engage in such development as the former deemed necessary or proper, could then turn in on his own account and develop the field for his own sole benefit, so long as he did not deny to the other the privilege of doing likewise, then it would follow that the co-owner, or colessee, with the greater means (and perhaps information) might proceed to deplete the field to the prejudice of his less opulent (or less informed) co-owner, or colessee.

[2] On the other hand, it is said that the failure of one co-owner or colessee to join the other would work injury to that other. This, however, cannot be; for the right of an owner to refrain from exercising his right of ownership, if so minded, is absolute. C. C. arts. 491, 496. And no *inaction* on his part, in any matter wherein no law compels

and no engagement binds him to act, can be complained of by any one. The fact is that when parties own lands or leases or other property in common and cannot agree between themselves, the obvious course for them to follow is to demand a partition thereof between them.

### Decree.

The judgment appealed from is therefore affirmed.