## COILE v. CRAWFORD.
### No. 5099.

Court of Appeal of Louisiana.
Second Circuit.
June 29, 1935.

Thos. W. Robertson, of Shreveport, for appellant.

Wallace & Hardeman and R. H. Lee, all of Benton, for appellee.

TALIAFERRO, Judge.

Plaintiff leased to defendant for the year 1934 several tracts of land in Bossier parish in consideration of one-fourth of the crops of cotton, hay, and corn produced thereon. A tract of 80 acres of the leased lands, referred to as the "Gayle" tract, was not owned by plaintiff. He had leased it himself from the owner. He was not obligated to pay any rent thereon save one-fourth of the cotton produced on a plot of 7 or 8 acres, which was planted to cotton by him in 1932 and 1933. Plaintiff also rented to defendant for 1934 four work mules, harness therefor, a mowing machine, and other farming implements for which defendant agreed to pay him in cash $155. Plaintiff avers that it was definitely understood between him and defendant that the 7 or 8 acre tract of the "Gayle" land should be planted to cotton, but that contrary to the agreement, corn alone was planted thereon.

He averred that defendant had harvested all his crops and that he was entitled to possession of the mules and farming implements leased to him; that under the terms of their agreement said mules and implements were to be returned to him in as good condition as when received, such return to be made when the crop was harvested; that defendant agreed to feed and

water said mules and to care for them in a reasonable and prudent manner, which he did not do; that as a result of neglect and mistreatment of the mules, they had depreciated in value and had been damaged to the extent of $260. He also alleges that defendant destroyed a wooden cistern on the leased premises of the value of $12.

This suit was filed December 17, 1934. Plaintiff sues for following amounts:

| | |
|---|---|
| Rent on mules and implements.... | $155.00 |
| Fair rental for 7 or 8 acres of "Gayle" land if planted to cotton as agreed | 100.00 |
| Value of one wooden cistern destroyed | 12.00 |
| Damages to the 4 mules because of insufficient feed and water and other neglect and mistreatment. | 260.00 |
| Total | $527.00 |

He further avers that, "as owner of said mules and farm implements, he fears, and believes that the defendant will further damage, conceal or part with said property in his possession during the pendency of this suit and that a writ of sequestration is necessary to protect" his rights in the premises. A writ of sequestration issued, under which the sheriff seized the mules in question and some corn. However, there was no demand or prayer that anything be sequestered but the rules and farm implements. The writ did not command that any corn be seized.

It appears that on December 14th, four days before this suit was filed, defendant deposited to the credit of plaintiff $155 in the Bank of Plain Dealing, wherein plaintiff had an account, to pay rent on the mules and implements, and that on the following day he brought the mules back to the leased lands and left them in a lot used by plaintiff, at which place they were seized by the sheriff. The farming implements were also left at some place on the leased premises. Plaintiff knew nothing of the deposit in bank, nor that defendant intended to surrender possession of the leased chattels by leaving them at the places above mentioned, until after he filed suit.

On December 24th appears the following minute entry in the case:

"It is moved by Attorney for plaintiff, and ordered by the Court, that the sequestration heretofore executed be dismissed. Motion to dissolve filed."

The sequestration was immediately released. On January 31st the motion to dissolve was tried and overruled, although the sequestration had been abandoned. The basis of this motion is that the grounds upon which the writ was sued out are false and untrue. Elements of damages, set up in the motion for which judgment is prayed, are as follows:

| | |
|---|---|
| 1. Expenses and disbursements caused defendant in "arranging to defend said writ of sequestration" | $ 15.00 |
| 2. Damage to his business reputation, credit and business standing, humiliation and embarassment caused by issuance of the writ | 50.00 |
| 3. Attorney's fee caused by being forced to employ counsel to defend said writ of sequestration, and file and try the motion to dissolve | 50.00 |
| Total | $115.00 |

Reserving his rights under this motion, defendant answered. He denies that he agreed to plant any part of the "Gayle" tract in cotton, and avers "that the cistern was worthless as such, the material thereof being converted into an outhouse on the leased land in the form of an improvement." He denies that he neglected or mistreated the mules while in his possession, but on the contrary avers that he cared for them as they should have been cared for, and delivered them back to plaintiff in his lot on December 15th in as good condition as they were when intrusted to his possession, necessary wear and tear excepted. He admits the mules were in good condition when he leased them. In reconvention, he sues plaintiff for $1,032, for this, to wit:

1. That he leased from plaintiff 200 acres of land, whereas only 167 acres were abandoned to him, plaintiff retaining the other 33 acres, which would have produced 1,320 bushels of corn worth $1 per bushel, of which his portion would have been one-fourth, or 280 bushels, worth $280.

2. That plaintiff turned his cattle, mules, and hogs into the leased premises before the crops were gathered, which destroyed

7 bales of cotton of a value of $60 per bale, a total of $420, and destroyed 50 bushels of corn worth $50; that they destroyed one ton of alfalfa hay and two tons of Bermuda hay worth $57—a total damage on this account of $527.

3. Damages for illegal issuance of said writ of sequestration to the extent of $115, as itemized and set forth in his motion to dissolve said writ.

There was judgment for plaintiff for $100 as rent on that part of the "Gayle" tract which should have been planted to cotton, and for $50 to cover damages to the mules on account of neglect and mistreatment of them. Defendant was given judgment on his reconventional demand as follows: Attorney's fee of $50 "incurred in the dissolution of the writ of sequestration," and $10 for expenses in connection "with the dissolution of the said writ of attachment." In all other respects the demands of each party were rejected. Plaintiff was cast for costs incurred in connection with issuance of the sequestration; all other costs were assessed against defendant. This appeal is prosecuted by defendant. Answering the appeal, plaintiff prays for increase in amount allowed as damages to the mules to $260, $12 for the destroyed cistern, and prays that defendant's reconventional demand be rejected in its entirety.

■ The record in this case, in addition to the pleadings, consists of nearly 300 pages of typewritten evidence. We have read it diligently, and find no manifest error in the lower court's resolution of the questions of fact involved in plaintiff's theory of his rights. The testimony clearly preponderates in favor of plaintiff's version of the terms of the lease contract with defendant as regards planting the 7 or 8 acres of the "Gayle" tract in cotton. Plaintiff paid Gayle, the owner, $100 for the use of the land, and this being a reasonable rental therefor, if planted to cotton in 1934, had the right to pass this on to defendant. Under his contract with Gayle plaintiff was obligated to raise cotton on the tract. Defendant contends that cotton was worth $60 per bale in 1934. If this tract had produced only 6 bales, one-fourth thereof, excluding the seed, would have been worth nearly $100.

■ In regard to the condition of the mules when delivered back to plaintiff, we think the testimony sustains the contention that their condition was much worse than it should have been, and that this was the result of insufficient feed and water when the animals were subjected to heavy work, coupled with lack of proper attention to them in some other respects while they were being worked. The true extent of the damages resulting from this lack of care and neglect is not easy to arrive at. One of the mules became sick, but it is not definitely shown that the sickness was due to mistreatment at the time. Two of them were quite old; none were young. Testimony on this phase of the case consists of plaintiff's and that of several of his friends and tenants, while defendant is supported by evidence of a large array of his tenants and others. We shall abide by the lower court's finding on this issue.

Reconventional Demand.

■ Defendant admits that he never demanded of plaintiff that he deliver to him possession of the 33 acres he contends in his answer were wrongfully withheld from him. He testified that this acreage was part of the "Henderson" tract, but when asked if he was positive that that tract was included in his lease, replied, "I suppose it was." In other respects, he evinces uncertainty on this issue, and we conclude that it is not now seriously contended that he should recover any amount on account of the alleged shortage in land. Certainly no damage on this account has been proved.

■ The claim for damages on account of destruction of cotton, corn, and hay by plaintiff's stock is equally lacking in certainty of proof to sustain it. It appears that late in the harvesting season some cattle, not all owned by plaintiff, did make their way into the cotton field, and did do some damage to the unopened cotton bolls, and perhaps to a small extent to open cotton. The extent of such damage, necessarily, due to its nature, is not definitely established; and, in addition, plaintiff's cattle were not responsible for all of it. When defendant settled with plaintiff for use of the lands, excepting rent on the "Gayle" cotton land, nothing was said by defendant about the alleged loss to him from depredations of plaintiff's cows and hogs. This claim has the appearance of afterthought. The same comment may be made as to loss of corn. No damage whatever is shown to have been inflicted on the hay crops. It is admitted that plaintiff was not notified that his hogs and cattle were in

the fields, and therefore was not given opportunity to restrain them. It is not clearly shown that a stock law prevailed in the community.

The award to defendant on his reconventional demand, the judgment says, was for damages and expenses incurred in connection with dissolution of the writ of sequestration. Prior to filing the motion to dissolve, and, of course, prior to trial of case on its merits, the sequestration had passed out of the case on plaintiff's voluntary action, approved by the court; therefore, it could not have been dissolved by the judgment in the case. We assume that what the court a quo intended to do was to award defendant a judgment for the damages sustained by him to the time the sequestration was expunged from the case. It will be noted that the attorney's fee of $50 was, according to the motion to dissolve, incurred because plaintiff was forced to employ counsel "to defend the writ of sequestration, and file and try" the motion to dissolve. But there was no writ to be dissolved after it had been dismissed from the case.

■ Where a conservatory writ, after being executed is abandoned by plaintiff, only such damages are recoverable therefor, if issued without malice or on probable cause, based upon reasonable grounds, as have actually accrued or been sustained to the moment the writ was voluntarily abandoned or dismissed from the case. Steinhardt v. Leman, 41 La. Ann. 835, 6 So. 665; Cox v. Robinson et als.,.2 Rob. 313.

■ Where, as in this case, a fee has been paid to counsel to prepare, file, and prosecute to final conclusion a motion to dissolve a writ of sequestration, and the writ is voluntarily abandoned before the motion is tried, it cannot be said that the entire fee so paid is chargeable to plaintiff as an element of damage. The main part of the service for which the fee was paid was not actually rendered. It was obviated by plaintiff's own act.

■ The testimony in the case does not disclose the value of counsel's services, looking to the dissolution of the writ, to the time the writ was abandoned, nor does it disclose that defendant incurred any expense as a result of the suit being filed against him, which was not incurred, at least in part, on account of defending the case on its merits and prosecuting his re-

conventional demand. Jones v. Monroe, 136 La. 148, 66 So. 760.

In view of this situation, defendant's reconventional demand for attorney's fees will have to be nonsuited; and his demand for other expenses incurred will be rejected.

For the reasons assigned, the judgment in favor of plaintiff, appealed from, is affirmed. The judgment in favor of defendant in reconvention is reversed and set aside; his demand for attorney's fee as an element of damages resulting from the illegal issuance of the writ of sequestration is dismissed, as of nonsuit. Costs of appeal are assessed against defendant; all other costs are assessed against the parties as fixed in the judgment of the lower court.